**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ADDIE ZOLICOFFER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 6362 |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, CHICAGO | ) | Judge John J. Tharp, Jr. |
| POLICE OFFICERS D. STRICKLAND | ) | |
| Star #6690 and N. RIVERA Star #12867, | ) | |
| and UNKNOWN CHICAGO POLICE | ) | |
| OFFICERS | | |
| | | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Addie Zolicoffer alleges that Chicago Police Officers Strickland and Rivera falsely arrested her without probable cause and maliciously prosecuted her in violation of Illinois law. She also claims that the City of Chicago is liable for the officers' actions under state law theories of indemnification and *respondeat superior*. Zolicoffer's allegations raise the troubling possibility that the defendant officers arrested her because she exercised her right to document the public conduct of other police officers. However, even construing the facts in the light most favorable to Zolicoffer, the defendant officers had probable cause to believe that she falsely represented herself to be an agent or employee of the federal government, which constitutes a Class A misdemeanor under Illinois law. Therefore, because the defendants had probable cause to arrest Zolicoffer and charge her with a misdemeanor, their motion for summary judgment is granted.

BACKGROUND

Plaintiff Zolicoffer has been an employee of Ada S. McKinley, a non-profit corporation that provides employment training to adults and places them in supported employment settings, since 2010. At the time of the incident in question she worked as a supervisor of the janitorial staff at the Dirksen Federal Courthouse in Chicago. Pl.'s Statement of Facts (Dkt. 38) ¶¶ 1-2.[1] Though she works in a federal government building, she is not a federal employee. On the afternoon of September 15, 2010, Zolicoffer observed two police officers frisking a young man in the area of 7100 South Jeffery Boulevard in Chicago. *Id.* ¶ 3; Def.'s Statement of Facts (Dkt. 32) ¶ 7. Zolicoffer heard the young man complain that the officers were hurting him, and she began to take photographs of what she was observing. Pl.'s Statement of Facts (Dkt. 38) ¶¶ 3-4. Earnest Mayfield, a security guard from a nearby grocery store, approached Zolicoffer and told her (incorrectly) that it was against the law to take pictures of the police. *Id.* ¶¶ 5, 10. Zolicoffer responded that she worked in the federal courthouse and she knew the law, and that she would

---

[1] For the purposes of summary judgment, the Court resolves all disputed facts in the light most favorable to Zolicoffer, and make all reasonable inferences in her favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Also, the Court notes that the defendants failed to comply with Local Rule 56.1(a). Zolicoffer submitted a statement of additional undisputed facts pursuant to L.R. 56.1(b)(3)(C), but rather than admitting or denying any of the additional facts, the defendants objected to each additional fact as "inconsistent with the purposes of [the] local rule" and asked that each additional fact be stricken. The defendants' objections are overruled. Zolicoffer's additional facts are precisely the sort of facts envisioned by the local rules. Further, since the defendants failed to controvert any of Zolicoffer's additional facts, the additional facts are deemed admitted for the purposes of this motion. L.R. 56.1(a) ("All material facts set forth in the statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party."). The defendants also filed a "reply" in support of their own statement of undisputed facts. Dkt. 42. The reply consists solely of the defendants' argument as to why each of its statements of fact should be "deemed admitted" even though Zolicoffer appropriately denied many of the defendants' statements. The defendants' argumentative reply is contrary to the letter and the spirit of the local rules, and is therefore stricken. Statements of undisputed facts and responses thereto should contain only facts. Argument is reserved for the parties' briefs.

not take any action that would jeopardize her job. *Id.* ¶ 6. She then ended the conversation with Mayfield, and walked to a bus stop on the opposite side of the street. *Id.* ¶ 8.

Mayfield, who was evidently nothing if not zealous in the execution of his perceived duties, then flagged down Chicago police officers Strickland and Rivera, who were driving down the street on routine patrol. Def.'s Statement of Facts (Dkt. 32) ¶ 8. After the officers pulled over, Mayfield approached their car and told them that Zolicoffer had been taking pictures of the police, that she claimed to be a federal agent, and that she refused to show him any identification. *Id.* ¶ 11; Opening Br. (Dkt. 31) at 2, 4-6; Pl.'s Statement of Facts (Dkt. 38) ¶ 14; Zolicoffer Dep. (Dkt. 32-1) at 45:4-5. The officers then approached Zolicoffer, who was still waiting at the bus stop, to conduct a field interview, but Zolicoffer admits that the officers did not detain her at that point and that she "could have lawfully walked away from them" at that time. Pl.'s Statement of Facts (Dkt. 38) ¶ 13.

The officers accused Zolicoffer of telling Mayfield that she was a "federal agent," but Zolicoffer denied saying that to Mayfield, and told the officers that she worked for Ada S. McKinley in the federal courthouse. *Id.* ¶¶ 14-16. Though Zolicoffer disputes ever telling Mayfield that she was a federal agent or employee, *id.* at ¶ 21, she does not deny that Mayfield told the defendant officers that she had made that claim, nor that the officers reasonably believed that she made that claim.[2] Zolicoffer also admits that Officer Strickland knew that Ada S.

---

[2] Zolicoffer does not, however, contest that the security guard told the officers that Zolicoffer had represented herself to be a federal agent or employee. The relevant defendants' statement of undisputed fact states:

> Mayfield told the Officers that the young lady, whom he was pointing to, was taking pictures of other police officers. Mayfield approached her and asked her what she was doing; the lady stated that she was a federal agent. When Mayfield asked her for some I.D., the lady stated that she was a

3

McKinley was a not-for-profit organization that receives government funding. *Id.* ¶ 22. When the officers asked to see Zolicoffer's I.D. badge for the federal building, Zolicoffer explained that she did not yet have a badge because she had just started work and it takes up to six months to receive an I.D. badge. *Id.* ¶¶ 17-18.

The officers then arrested Zolicoffer, placed her in handcuffs, and transported her to a police station to continue their investigation. *Id.* ¶¶ 23-25.[3] After the officers verified that Zolicoffer did in fact work for Ada S. McKinley, they created an arrest report and criminal complaint stating that Ms. Zolicoffer falsely told the officers that she was a federal employee. *Id.* ¶¶ 31-32. Zolicoffer was placed in lockup and was not released until 5 a.m. the following day. *Id.* ¶ 33. After the case was continued several times, Zolicoffer exercised her right to a speedy trial, and on December 13, 2010, the matter was finally stricken with leave to reinstate. *Id.* ¶¶ 34-35.

## DISCUSSION

Even accepting Zolicoffer's version of the facts as true, summary judgment is proper because Officers Strickland and Rivera had probable cause to believe that Zolicoffer falsely represented herself to Mayfield as an official or employee of the federal government in violation of Illinois law.

---

federal agent, or employee, and a citizen, and that she could take pictures of officers or whatever she wanted.

Def.'s Statement of Facts (Dkt. 32) ¶ 11. In addition, Zolicoffer testified at her deposition that that the defendant officers were under the impression that she "told [Mayfield] that [she was] a federal agent." Pl.'s Statement of Facts (Dkt. 38) ¶ 14; Zolicoffer Dep. (Dkt. 32-1) at 45:3-4.

[3] The defendants' assertion that Zolicoffer was not under arrest when they handcuffed her, put her in their patrol car, and transported her to police headquarters is patently untenable, *see United States v. Swift*, 220 F.3d 502, 508 (7th Cir. 2000) (finding that suspects were "arrested" when they were forcibly removed to the police station to continue investigation), but is immaterial in view of the fact that they did have probable cause to arrest Zolicoffer at that point.

I. **The Defendants Are Entitled to Summary Judgment on the § 1983 False Arrest Claim.**

Probable cause is an absolute defense to a § 1983 claim of wrongful arrest against police officers. *Chelios v. Heavener*, 520 F.3d 678, 685 (2008). "A police officer has probable cause to arrest if, at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* at 686 (internal quotations omitted, alteration in original). To determine whether an officer had probable cause, "the court steps into the shoes of a reasonable person in the position of the officer." *Id.*

Under 720 ILCS 5/32-5(b) (2008), the Illinois statute in effect at the time of Zolicoffer's arrest, "[a] person who falsely represents himself to be a public officer or a public employee or an official or employee of the federal government commits a Class A misdemeanor."[4] On its face, the statute is quite broad, criminalizing all false statements of federal employment regardless of intent or potential for harm and the Illinois Appellate Court has enforced the statute broadly, stating that it "will not depart from the plain meaning of [the] statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent." *People v. Sroga*, 2011 IL App (1st) 100543-U (Ill. App. Nov. 15, 2011) (unpublished opinion); s*ee also People v. Farmer*, 2011 IL App (1st) 083185 ¶¶ 15-24 (rejecting First Amendment challenge to statute barring falsely representing oneself to be the parent of a minor child); *People v. Thoennes*, 334 Ill. App. 3d 320, 328-29, 777 N.E.2d 1075, 1081 (Ill. App. Ct. 2002) (rejecting

---

[4] Illinois law, like the Fourth Amendment, authorizes misdemeanor arrests regardless of whether the offense occurred in the presence of the arresting officer. *Woods v. City of Chicago*, 234 F.3d 979, 995 n. 8 (7th Cir. 2000).

First Amendment challenge to similar statute barring false personation of a peace officer).[5] Therefore, to establish that they had probable cause to arrest Mayfield, the officers need show only that the totality of the circumstances known to them at the time of the arrest were sufficient to cause a prudent person to believe that Zolicoffer had falsely claimed to be a federal agent or employee.

After Officers Strickland and Rivera spoke to Mayfield, they had reason to believe that he was telling the truth about Zolicoffer. The Seventh Circuit, in discussing when police officers are entitled to accept eyewitness statements as true, has expressly held that "[p]olice have reasonable grounds to believe a guard at a supermarket." *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 439 (7th Cir. 1986). The *Gramenos* court explained that the chance that a security guard is pursuing a grudge is small because security guards generally have no incentive to make false claims. *Id.* Here, there is no suggestion that the defendant officers disbelieved or should have disbelieved Mayfield's claims.

On its own, however, Mayfield's statement that Zolicoffer claimed to be a federal agent or employee was not enough to give the officers probable cause to make an arrest.[6] Before they spoke to Zolicoffer, the officers had no reason to believe that she was not actually a federal

---

[5] The plaintiff has not asserted that in criminalizing all such speech the statute is constitutionally overbroad.

[6] Nor did Mayfield's report provide "reasonable suspicion" to believe that Zolicoffer might have violated the Illinois statute as required to perform a *Terry* stop, as the defendants maintain (Opening Br. (Dkt. 31) at 4, 6) even though Zolicoffer admits that she was not detained by the officers when they originally began questioning her about her employment. Pl.'s Statement of Facts (Dkt. 38) ¶ 13. The defendants' assertion that they had grounds to conduct a *Terry* stop is also at odds with defendant Strickland's deposition testimony acknowledging that Zolicoffer was not required to answer the officers' questions and that she was free to leave. *See* Strickland Dep. (Dkt. 32-1) at 29:23-30:5. Where, as here, a reasonable person would believe that she was free to leave, there is no seizure for purposes of the Fourth Amendment. *Gentry v. Sevier*, 597 F.3d 838, 844 (7th Cir. 2010).

employee, and therefore they had no probable cause to believe that she had committed the crime of *falsely* claiming to be a federal employee or agent. But during the course of the officers' field interview, Zolicoffer admitted that she worked for Ada S. McKinley. Pl.'s Statement of Facts (Dkt. 38) ¶ 16. At that point, because Officer Strickland knew that Ada S. McKinley was a non-profit rather than a federal agency (*id.* ¶ 22), the officers had probable cause to believe that Zolicoffer had violated 720 ILCS 5/32-5(b) by claiming to be a federal employee when she was not. Zolicoffer told the officers that she did not tell the guard that she was a federal agent but only that she worked at the federal courthouse, Pl.'s Statement of Facts (Dkt. 38) ¶ 15; Def.'s Statement of Facts (Dkt. 32)¶ 26, but they were not obligated to credit her version of the encounter over that of the guard. *Gramenos*, 797 F.2d at 438-42 (holding that police had probable cause to make arrest based only on eyewitness statement even where suspect contradicted the eyewitness's version of events). According to Zolicoffer, the officers then took her cell phone away, told her that she was under arrest, patted her down, and placed her in handcuffs. Pl.'s Statement of Facts (Dkt. 38) ¶¶ 23-24. Zolicoffer's own timeline therefore establishes that the officers waited until they had probable cause to believe that she had violated the law before they placed her under arrest. Therefore, Zolicoffer's § 1983 false arrest claim fails.[7]

---

[7] The defendants' version of events differs from Zolicoffer's, in that they maintain that she first told them that she was a federal employee but was unable to produce any identification to substantiate that fact. Def.'s Statement of Facts (Dkt. 32) ¶¶ 23, 27. Even under this version of events, the defendants arguably had probable cause to arrest Zolicoffer. While a refusal to provide identification upon police request does not, standing alone, necessarily establish probable cause for anything, *Moya v. United States,* 761 F.2d 322, 325 (7th Cir. 1984) ("[p]robable cause is not established . . . by failing to present identification upon request by a law enforcement officer"), according to the defendants' version, Zolicoffer refused to provide any identification immediately after she identified herself to the officers as a federal agent. *Id.* ¶¶ 23-27. It is not patently unreasonable to believe that one representing herself as a federal agent or federal court employee would have some identification. That said, the defendants failed to cite

To say that the defendant officers had probable cause to arrest Zolicoffer is not, however, to say that it was appropriate to do so. The defendants go to great lengths in their motion to point out that they asked Zolicoffer no questions about why she had been taking pictures of other police officers, but the inference is compelling that the officers sought to question Zolicoffer only because she had been photographing other police officers in the course of an arrest. It is difficult to imagine that they would have sought to question her had the security guard's report omitted that fact (surely the Chicago police have more to do than keep grocery store parking lots free of people falsely claiming to be federal employees). Although police officers may not welcome it, there is nothing unlawful about photographing police activity on the public streets. *Cf. American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 586 (7th Cir. 2012) ("Illinois does not prohibit taking silent video of police officers performing their duties in public"). Efforts to deter such activity are destined only to expose police officers (and the municipalities—*i.e.*, taxpayers—that must indemnify them) to civil claims by the citizens who engage in that lawful behavior. It is simply fortuitous for the defendants that, in this case, they stumbled upon an alternative basis to justify their conduct.

## II. The Defendants Are Entitled to Summary Judgment on the Illinois Malicious Prosecution Claim.

Zolicoffer's malicious prosecution claim fails for the same reason. To succeed on a claim for malicious prosecution, Zolicoffer must establish "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4)

---

even one case holding that failure to produce identification provides probable cause to arrest for impersonation of a peace officer. The Court need not resolve this issue, however, given that the Plaintiff's admissions establish probable cause for her arrest.

the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 169 Ill.2d 504, 512, 662 N.E.2d 1238, 1238, 1242 (Ill. 1996). The defendants concede that the first and fifth elements of this test are satisfied for the purposes of this motion, but they dispute the second, third, and fourth elements.

Based on the discussion above, Zolicoffer cannot establish the third element of her claim, that the defendant officers lacked probable cause to charge her with violation of 720 ILCS 5/32-5(b). Since the officers had probable cause to charge her with a violation, a malicious prosecution claim is impossible. Because Zolicoffer cannot establish that necessary element, her malicious prosecution claim fails.

### III. The City is Entitled to Summary Judgment on the Indemnification and *Respondeat Superior* Claims.

Because the Court enters summary judgment in favor of the defendant officers with respect to the false arrest and malicious prosecution claims, it must also grant summary judgment to the City on the plaintiff's indemnification and *respondeat superior* claims. *See* 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."); *Smith v. Chicago Limousine Serv., Inc.*, 109 Ill. App. 3d 755, 760-61, 441 N.E.2d 81, 85 (Ill. App. Ct. 1982) ("there can be no liability on the part of a principal under the application of the *respondeat superior* doctrine unless the agent is also held to be liable").

\*     \*     \*

For the reasons set forth above, the Court grants the defendants' motion for summary judgment in their favor, with prejudice, on all claims.

9

Entered: March 20, 2013

John J. Tharp, Jr.
United States District Judge